O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARVIN D. PERNELL o/b/o V.I.P., ) | NO. EDCV 07-1604-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | AND ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff filed a Complaint on December 17, 2007, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On January 11, 2008, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). On September 18, 2008, the parties filed a Joint Stipulation in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for a new administrative hearing; and defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

On September 28, 2004, plaintiff Vincent Imanuel Pernell's father, Marvin D. Pernell, on behalf of his minor son, protectively filed an application for SSI, alleging disability since May 1, 2004,[1] due to seizure disorder and asthma. (Administrative Record ("A.R.") 19, 98, 109.) The application was denied initially and upon reconsideration. (A.R. 62-63, 66-75.) On March 7, 2007, and June 8, 2007, plaintiff, who was represented by counsel and accompanied by his father, appeared at hearings before Administrative Law Judge Lowell Fortune ("ALJ"). (A.R. 369-96, 397-424.) On June 19, 2007, the ALJ denied plaintiff's claim (A.R. 16-27), and the Appeals Council subsequently denied plaintiff's request for review of the ALJ's decision (A.R. 6-9).

## SUMMARY OF ADMINISTRATIVE DECISION

In his written decision, the ALJ found that, as of September 28, 2004, the date the application was filed, plaintiff was an older infant and, as of June 19, 2007, the date of the ALJ's decision, plaintiff was a pre-schooler. (A.R. 19.)

The ALJ determined that plaintiff has the following "severe" impairments: a seizure disorder; a disruptive disorder, not otherwise specified; and attention deficit hyperactivity disorder ("ADHD"). (A.R. 19.) The ALJ further determined that plaintiff does not have an

---

[1] At the supplemental administrative hearing, plaintiff's counsel amended plaintiff's alleged disability onset date to September 28, 2004, the protective filing date of plaintiff's SSI application. (A.R. 400.)

impairment or combination of impairments that meets, medically equals, or functionally equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)

The ALJ found, in reliance on the opinion of the medical expert psychologist, Michael E. Kania, Ph.D., that the opinion of plaintiff's treating psychologist, Wolfgang Klebel, Ph.D., was "based solely upon what [plaintiff's] father told the doctor and not on any independent objective findings or psychological testing."  (A.R. 22.)  The ALJ further found that the statements of plaintiff's father concerning the "intensity, persistence and limiting effects of [plaintiff's] symptoms are not entirely credible."  (A.R. 20.)

Based on the ALJ's assessment of the evidence and in reliance on the opinions of the two medical experts, Dr. Kania and Colin P. Hubbard, M.D., F.A.A.P., the ALJ concluded that plaintiff has not been disabled, as defined in the Social Security Act, since September 28, 2004, the date the application was filed.  (A.R. 27.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  <u>Orn v. Astrue</u>, 495 F.3d 625, 630 (9th Cir. 2007).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (citation omitted).  The "evidence must be more than a mere scintilla but not necessarily a preponderance."  <u>Connett v.

Barnhart, 340 F.3d 871, 873 (9th Cir. 2003).  While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice.  Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health and Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn, 495 F.3d at 630; *see also* Connett, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* Stout v. Comm'r, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* Burch, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following three issues: (1) whether the ALJ properly considered the treating psychologist's opinion; (2) whether the ALJ properly considered the lay witness statements of plaintiff's father; and (3) whether the ALJ properly considered the type, dosage, effectiveness, and side effects of plaintiff's medication. (Joint Stipulation ("Joint Stip.") at 2-3.)

**I.   The Reason Articulated By The ALJ For Disregarding The Opinion Of Plaintiff's Treating Psychologist Is Not Legitimate, And The Record Must Be Developed Further Regarding Plaintiff's Psychological Limitations And Seizure Disorder.**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). "Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record." Orn, 495 F.3d at 633 (*internal punctuation and citation omitted*); *see also* McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting the treating physician's opinion do not suffice). A licensed psychologist is an acceptable source of medical evidence and a treating psychologist's opinion is given the same weight as that of a treating physician. *See* 20 C.F.R. § 416.913(a)(2) (licensed or certified psychologists are acceptable medical sources, like licenced physicians (20 C.F.R. § 416.913(a)(1)), upon whose opinion a disability finding may be based).

In Social Security cases, the law is well-settled that the ALJ has an affirmative "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003)(ellipsis in original; quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)); Smolen, 80 F.3d at 1273. "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005)(citing Tonapetyan v. Halter, 242 F.3d at 1144, 1150 (9th Cir. 2001)).

The ALJ has a duty "'to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts'" by procuring the necessary, relevant treatment records. Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992)(citation omitted). Further, 20 C.F.R. § 416.912(e)(1) provides that the Administration "will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." *See also* 20 C.F.R. § 416.917 (when a claimant's medical sources provide insufficient evidence to determine whether the claimant is disabled, a consultative examination may be ordered); 20 C.F.R. § 416.919k (Commissioner may order the purchase of "psychiatric and psychological examinations, X-rays and laboratory tests (including specialized tests, such as pulmonary function studies, electrocardiograms, and stress tests) from a medical source").

In the present case, the ALJ rejected the opinion of plaintiff's treating psychologist, Dr. Klebel, in reliance on the opinion of the medical expert psychologist, Dr. Kania. (A.R. 21-22.) Dr. Kania opined that Dr. Klebel's opinion was "based solely upon what [plaintiff's] father told the doctor and not on any independent objective findings or psychological testing." (A.R. 22.)

The record contains two relatively short assessments completed by Dr. Klebel: (1) a Riverside County Mental Health Plan Assessment/Care Plan: Initial, signed on January 23, 2007 (the "January 2007 Assessment"); and (2) a Riverside Mental Health Plan Provider Referral Request Form, dated April 6, 2007, on the first page, but dated January 23, 2007, on the third, signature page (the "April 2007 Assessment").[2] (A.R. 235-37, 240-42, 243.)

In the January 2007 Assessment, Dr. Klebel diagnosed plaintiff with disruptive disorder, not otherwise specified, ADHD combined, grand mal seizures, asthma, and spiking fever difficult to contain. (A.R. 235.) Dr. Klebel reported that plaintiff presented with the following problems and clinical symtpomatology: "aggressive, destructive, breaking all toys and other things, sleepwalker and hitting brother in sleep,

---

[2] The second and third pages of both the January 2007 Assessment and the April 2007 Assessment are identical, except for a handwritten change made to plaintiff's dysfunction rating on page two of the April 2007 Assessment, from "Moderate" to "Severe. (A.R. 236-37, 241-42.) Next to the dysfunction rating box previously marked "Moderate" with a computer-generated "X," Dr. Klebel handwrote and signed "Rating corrected to Severe, 4-6-2007," in which Dr. Klebel hand-marked an "X" in the "Severe" box. (A.R. 241.) The third page of each assessments is identical. Given its signature date of January 23, 2007, it is likely that this third page should have been attached only to the January 2007 Assessment. (A.R. 237, 242.)

7

1  [n]ightmares and violent dreams, mother was on speed during pregnancy,
2  presently father has custody, child is excited after unsupervised visit
3  with mothe[r], [h]ad a head injury in forster [sic] care from a fall."
4  (*Id*.)  Dr. Klebel opined that, while plaintiff presented with a clean
5  appearance and normal affect and with speech and thought within normal
6  limits, plaintiff was "limited," "short," "agitated," and "angry."
7  (*Id*.)  Dr. Klebel further opined that plaintiff requires constant
8  supervision, because he "picks up things everywhere and might be
9  endangering his safety" and because of his "[a]ggressiveness with
10 siblings."  (A.R. 237.)  Dr. Klebel reported that plaintiff was "in
11 treatment with neurologist in Loma Linda hospital," and at that time,
12 plaintiff's dysfunction rating was "Moderate."  (A.R. 235-37.)

14     With respect to treatment recommendations, Dr. Klebel opined that
15 plaintiff's "destructiveness might be partially caused by his epilepsy,
16 but needs to be controlled and he needs to learn how to deal with his
17 aggrisive [sic] emotion, will take probably more than one year of
18 treatment."  (A.R. 236.)  Regarding the medication plaintiff was taking
19 at that time, Dr. Klebel stated that plaintiff was taking phenobarbital
20 for epilepsy and abuteral for asthma.  (*Id*.)  As for familial mental
21 illness, Dr. Klebel noted that plaintiff's mother is bipolar, and she
22 is, and was during her pregnancy with plaintiff, on methamphetamine, for
23 which she has not received treatment.  (*Id*.)

25     With respect to anticipated behavioral outcome/goals, Dr. Klebel
26 listed the following goals to be completed by April 23, 2007:  "[a]nger
27 management and control of agressiveness [sic], (hyperactivity possible
28 in need of control by medication), has 'non-stop' problems of aggressive

and destructive behavior every day – to reduce to 1-2 times per day" and "[w]ill try to attempt some behavioral approach and desensitation to control his aggressive and angry nightmares through talking about them and playing games, reduce them from nightly and when napping, to reduce 1-2 times a week." (A.R. 237.) Dr. Klebel's anticipated methods for achieving these goals included: "[p]lay therapy with puppets and developing stories with him dealing with his problems, some cognitive approach to desensitize bad memories, maybe some bad memories are preverbal." (*Id.*)

In the April 2007 Assessment, Dr. Klebel again diagnosed plaintiff with disruptive disorder, not otherwise specified, ADHD combined, grand mal seizures, asthma, and spiking fever difficult to contain. (A.R. 240.) Dr. Klebel modified his dysfunction rating of plaintiff from "Moderate" to "Severe" and referred plaintiff for a psychiatric evaluation. (*Id.*) Dr. Klebel stated the following reasons for psychiatric evaluation referral:

> [Plaintiff] cannot keep attention to anything, always into something, endangering himself by jumping from h[e]ights, unprovoked aggressive behavior towards brothers and friends, rejected from daycare for same reasons. Takes food from garbage, from other in restaurants etc., Father tries to control him with time out, take away toys etc. with no effect. Sleepwalking, when he wakes up he is shaking for 5 minutes, fidgeting all the time. Was exposed prenatally to drugs. Severe behavioral problems, needs constant direct supervision. This will create future problems in school and is disabling

9

his capacity to learn and mature.

(*Id.*)

After reviewing Dr. Klebel's assessments and the record as a whole, it is not clear that Dr. Klebel relied entirely on plaintiff's father's statements in rendering his opinion regarding plaintiff's psychological and behavioral issues. While some of Dr. Klebel's statements plainly must be premised upon plaintiff's father's observations (which is entirely reasonable, given plaintiff's young age), it is not clear that Dr. Klebel's conclusions were "based solely upon what the father told the doctor and not on any independent objective findings or psychological testing," as Dr. Kania opined and the ALJ concluded. (A.R. 22.) A reasonable interpretation of the evidence is that Dr. Klebel based his opinion, at least in part, on what he observed during his sessions with plaintiff. Accordingly, the ALJ's rejection of Dr. Klebel's opinion, because it was "based solely upon" plaintiff's father's observations, lacks the support of substantial evidence and falls short of the "specific, legitimate" standard dictated by Ninth Circuit precedent.

Notwithstanding the above, plaintiff's treatment with Dr. Klebel and psychological care in general appear to be limited, incomplete, and inadequate to allow for proper evaluation of plaintiff's psychological condition(s) and any attendant limitations.[3] Specifically, plaintiff's

---

[3]   For the minor plaintiff in this case to receive proper evaluation and treatment, it is imperative that plaintiff's parents schedule and attend appointments and follow-up appointments. This has not occurred

father testified at the hearing that plaintiff treated with Dr. Klebel on six separate occasions, twice a month as permitted by Medicare, yet the record contains only two mental health assessments by Dr. Klebel and no treatment notes. (A.R. 235-37, 240-43, 410.) Further, in a handwritten letter to the ALJ, dated March 24, 2007, plaintiff's father stated that, according to Dr. Klebel, the January 2007 Assessment should have been dated February 7, 2007, and it "was supposed to be a detailed report on [plaintiff's] status instead of an assessment of what [plaintiff] was diagnosed with." (A.R. 46.) However, the record does not contain any assessment that bears a February 7, 2007 date, nor does the record contain any "detailed report" by Dr. Klebel. In the April 2007 Assessment, Dr. Klebel referred plaintiff for a psychiatric evaluation, yet there are no psychiatric evaluation results or treatment notes in the file, and there is no evidence that plaintiff has undergone a consultative psychiatric evaluation or other appropriate psychological testing.

---

on a regular basis thus far.

    The record reflects several failures to follow-up with recommended treatment and "no-shows" by plaintiff's mother. (A.R. 20 -- ALJ states that plaintiff's doctors "suggested increasing the Phenobarbital level with close follow up. [Plaintiff's] mother failed to show for any follow-up visits"; 194 -- Letter dated November 14, 2004, by plaintiff's treating pediatrician, Annalisa Abjelina, M.D., which states plaintiff's neurologist, Debra Demos, M.D., "suggested increasing [plaintiff's] dose [of phenobarbital] and close follow-up . . . but [plaintiff's mother] has failed to show up to our office since August for a follow-up examination. . . . I reported this to Child Protective Services.") Further, despite some effort by plaintiff's father to pursue medical and psychological care for plaintiff, the record is replete with notations of cancelled appointments and "no-shows" by plaintiff's father as well. (A.R. 21 -- ALJ states that, "[plaintiff's] father cancelled two appointments and failed to show on two other occasions"; 239 -- Letter dated February 27, 2007, by plaintiff's treating child and family therapist, Ann Hull, M.A., which states, "Father called and cancelled two appointments and failed to show on two other occasions").

11

Earlier treatment with child and family therapist, Ann Hull, M.A., with whom plaintiff treated on September 27 and 28, 2006, also was not pursued properly. Follow-up care with Ms. Hull was not undertaken, despite Ms. Hull's statement that "more time would . . . be needed to determine if the symptoms [plaintiff's] father reported are observable." (A.R. 239.) The record reflects that, due to the fact that plaintiff's father "cancelled two appointments and failed to show on two other occasions," Ms. Hull closed her file and discharged plaintiff on October 25, 2006. (*Id.*)

The record regarding the nature and extent of plaintiff's seizure disorder also is sketchy. There is no evidence that plaintiff has undergone any recent formal neurological testing to assess the nature, extent, and cause(s) of his seizure disorder and the extent, if any, to which he experiences side effects as a result of taking phenobarbital. While medical professionals from Loma Linda University Children's Hospital have opined that there may be a connection between plaintiff's seizure activity and a high fever, as the diagnosis of "febrile seizures" reflects,[4] there is no evidence of formal testing to confirm or rule out this theory. (A.R. 288, 298, 323, 384.) The most recent brain wave test of plaintiff was performed in 2004, despite plaintiff's significant seizure activity since then. (A.R. 384-86.) On November 15, 2004, one of plaintiff's treating physicians, Debra Demos, M.D., recommended increasing plaintiff's phenobarbital level with close follow-up, but the record is devoid of any follow-up visits. (A.R. 194, 227.)

---

[4] According to http://en.wikipedia.org, a "febrile seizure" is a convulsion triggered by a sudden rise in body temperature.

It is also unclear whether plaintiff's "severe" disruptive disorder and ADHD are independent impairments, or whether they exist secondary to plaintiff's seizure disorder and/or phenobarbital side effects. Indeed, Dr. Klebel opined that plaintiff's "destructiveness **might be partially caused** by his epilepsy," and for proper assessment, plaintiff would require "probably more than one year of treatment." (A.R. 236; emphasis added.)

Even the medical expert, Dr. Hubbard, testified at the hearing that plaintiff's "acting out behavior" may be "just bad behavior," or "it may be pathological . . . we'll see . . . investigate it." (A.R. 393.) Dr. Hubbard further testified that, "we seem reasonably certain [plaintiff] doesn't have a brain tumor . . . he's not doing -- a temporal lobe seizure, or maybe he is. At this point, **we don't know**." (*Id.*; emphasis added.)

On remand for further development of the record, **all** treatment records and reports prepared by Dr. Klebel and plaintiff's other treating physicians should be obtained. Further, it appears that it may be necessary to have plaintiff undergo a consultative examination by a psychologist or psychiatrist and be given and appropriate work-up with necessary testing and/or an appropriate neurological consultative examination to assess the nature, extent, and etiology of plaintiff's seizure disorder and attendant limitations.

///
///
///
///

**II. Until The Record Has Been Developed Further, The Court Cannot Assess Whether The ALJ Properly Considered The Statements Of Plaintiff's Father Regarding His Observations Of Plaintiff's Psychological Limitations, Seizures, And Purported Medication Side Effects.**

In evaluating the credibility of a claimant's assertions of functional limitations, the ALJ must consider lay witnesses' reported observations of the claimant. Stout, 454 F.3d at 1053. "[F]riends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [the claimant's] condition." Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993); 20 C.F.R. § 416.913(d)(4) ("we may also use evidence from other sources to show the severity of your impairment(s) . . . . Other sources include, but are not limited to . . . spouses, parents and other care-givers, siblings, other relatives, friends, neighbors, and clergy"). "If an ALJ disregards the testimony of a lay witness, the ALJ must provide reasons 'that are germane to each witness.'" Bruce v. Astrue, 557 F.3d 1113, 1114 (9th Cir. 2009) (citation omitted). Further, the reasons "germane to each witness" must be specific. Stout, 454 F.3d at 1054 (explaining that "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony").

An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly, when, as in Vincent, "lay witnesses [are] making medical *diagnoses*," because "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute

competent evidence." Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (original emphasis). When, as here, however, a lay witness testifies about a claimant's symptoms, such testimony *is* competent evidence and cannot be disregarded without comment. Id. Under Stout, 454 F.3d at 1055, "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."

Further, when an ALJ evaluates a claimant's limitations, he must consider evidence regarding the side effects of medications. Social Security Ruling 96-7p requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms." *See also* 20 C.F.R. § 416.929(c)(3)(iv). The Ninth Circuit has observed that an ALJ must "consider all factors that might have a 'significant impact on an individual's ability to [function].'" Erickson v. Shalala, 9 F.3d 813, 817 (9th Cir. 1993)(citation omitted). Such factors "may include side effects of medications." *Id.* at 818.

The ALJ found that plaintiff's father's statements regarding his observations of plaintiff's behavioral problems and medication side effects were "not entirely credible," primarily because the treatment reports did not corroborate what plaintiff's father described. (A.R. 20-21.) Plaintiff's father testified that plaintiff is: aggressive toward his brothers; destructive with toys; has nightmares; sleepwalks; usually seizes in the middle of the night; has difficulty understanding

and learning, because he cannot listen at least five minutes to stories being read; and "hyper, aggress[ive], ang[ry], and [experiences] slurred speech" as a result of taking phenobarbital to control his seizures. (A.R. 78, 102, 376, 393.)

Until the record is developed further regarding plaintiff's psychological condition and seizure disorder and his attendant limitations, the Court cannot assess the propriety of the ALJ's rejection of plaintiff's father's statements regarding his observations of plaintiff. After the record has been developed further, the ALJ must provide germane reasons, to the extent they exist, for rejecting the statements of plaintiff's father regarding his observations of plaintiff's behavioral issues, seizure activity, and medication side effects.

### III. **Remand Is Required.**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were

properly evaluated, remand is appropriate. *Id.*

Here, remand is the appropriate remedy to allow the ALJ the opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 21, 2009

*/s/ Margaret A. Nagle*
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE